## A96A0894. BRAZLE v. THE STATE.
(478 SE2d 412)

ANDREWS, Judge.

Tyrone Brazle appeals his conviction on a jury verdict finding him guilty of armed robbery. We reverse the judgment of the trial court.

1. In his first enumeration of error, Brazle claims the trial court erred in denying his motion for directed verdict. The standard of

review of the denial of a motion for directed verdict of acquittal is the "reasonable doubt" test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *West v. State*, 218 Ga. App. 341, 342 (461 SE2d 300) (1995).

Here, the evidence at trial was that on the evening of January 9, 1995, Brazle and co-defendants Walker and Foley spent the night at the house of Carol Foley, the mother of defendant Foley and the common-law wife of Brazle. Around 1:00 the next afternoon, Foley and Walker went to the J. Loan Company in Riverdale. Foley and Walker went into the shop and Walker asked Jack Watson, the owner of the shop, to show him a gold chain which was hanging behind the counter. As Watson turned to reach for the chain, Foley pulled a gun and told him to raise his hands. Foley gave the gun to Walker who told Watson to go into the back of the shop. Afraid that Walker would kill him, Watson refused. Walker then told Watson to lie on the floor. Foley took jewelry and guns from the case and put them in a canvas bag.

As soon as Walker and Foley left, Watson got up, grabbed two loaded guns from behind the counter and ran outside. He saw the two men running on the other side of the street and fired at Foley, hitting him in the leg. Watson called 911 and then went over to Foley and stayed with him until police arrived.

In his in-custody statement introduced at trial, Brazle stated he left home and drove to the Chateau Forest Apartments and backed his truck into one of the parking spaces. The evidence showed that Brazle had a clear view of the J. Loan Company from where his truck was parked. After he backed into the parking space, Brazle said he raised the hood on his truck to check on a brake problem. At that point, he heard gunshots and left. Brazle stated he left the parking lot and drove to his attorney's office to pick up a settlement check from a workers' compensation claim. In his defense, Brazle submitted a repair estimate from Brake-O which showed that the brakes on his truck were in a condition such that the truck was "unsafe to drive — cannot be driven." Although the estimate was made in April 1995, a store manager with Brake-O, testifying as an expert, stated at trial that, given the condition of the truck's brakes in April, it probably would have had bad brakes in January. Brazle also called an employee from Brazle's attorney's office who testified she called Brazle on the morning of January 10, 1995, to tell him to come by and pick up his settlement check. She stated that Brazle arrived at the office around 1:00 and left around 2:00.

We find the trial court erred in denying Brazle's motion for a directed verdict of acquittal. "Where there are only unexplained and suspicious circumstances, they are not sufficient to convict the defendant. [Cits.]" *Williams v. State*, 126 Ga. App. 350, 355 (190

SE2d 785) (1972). Here, although Brazle's parking of his truck across the street from the scene of the robbery is suspicious, it is not unexplained, as he has shown that he was on his way to his attorney's office and he also submitted evidence of brake trouble. Further, " '[n]either presence, nor flight, nor both together without more, is conclusive of guilt.' " *Williams*, supra at 355. In this case, arguably, there is not even presence or flight as Brazle was never at the scene of the crime, but only in the vicinity. This Court has found that proximity without additional evidence of participation in the crime was insufficient to support a conviction for burglary. *Willis v. State*, 214 Ga. App. 659, 660 (448 SE2d 755) (1994). In addition, there is no other evidence which would connect Brazle with the robbery. See *Muckle v. State*, 165 Ga. App. 873, 875 (303 SE2d 54) (1983) (evidence created no more than a suspicion that the defendant committed the crime); *O'Quinn v. State*, 153 Ga. App. 467, 472 (265 SE2d 824) (1980) (mere presence, even when coupled with suspicion, is not sufficient to authorize a conviction without any evidence to show participation of defendant in illegal act); *Phillips v. State*, 133 Ga. App. 461, 464 (211 SE2d 411) (1974) (where there were only unexplained and suspicious circumstances and no evidence to connect defendant to the crime, trial court erred in denying motion for directed verdict of acquittal). Therefore, we hold the evidence was insufficient for a rational trier of fact to find beyond a reasonable doubt that Brazle was guilty of armed robbery. *Rodgers v. State*, 213 Ga. 797, 803 (102 SE2d 10) (1958). Accordingly, the trial court erred in denying Brazle's motion for directed verdict of acquittal.

2. In light of the holding above, we need not address the remaining enumerations of error.

*Judgment reversed. McMurray, P. J., concurs. Birdsong, P. J., Blackburn and Smith, JJ., concur specially. Beasley, C. J., Pope, P. J., Johnson and Ruffin, JJ., dissent.*

SMITH, Judge, concurring specially.

The dissent says that Brazle's defense — really his *alibi* — that he left the parking lot and went to pick up his check — "was not inconsistent with his participation in the crime." That may be true, but it is not material. What matters is whether the evidence is inconsistent with his defense. To base a conviction on evidence that is merely consistent with guilt goes too far. To support a conviction on circumstantial evidence alone, the evidence must not only be consistent with Brazle's guilt, but must be inconsistent with — must exclude — his reasonable hypothesis of innocence. See, e.g., *Cooley v. State*, 219 Ga. App. 176, 177 (464 SE2d 619) (1995). In my view, the evidence here fails in that respect.

I am authorized to state that Presiding Judge Birdsong and

Judge Blackburn join in this special concurrence.

POPE, Presiding Judge, dissenting.

I respectfully dissent. Though it is true that suspicious circumstances are insufficient grounds for conviction, there is sufficient evidence in the record of Brazle's involvement in the robbery to convict.

In addition to the facts recited in the majority opinion, Officer Beddingfield testified that when he initially spoke to Brazle about the robbery, Brazle stated that he did not know what Beddingfield was talking about — that he "knew nothing about it." Brazle's response later changed and he told Beddingfield that he had driven his truck to the Chateau Forest Apartments, had backed it into a parking space and worked on his brakes. Brazle told Beddingfield that he left because he heard gunshots, which frightened him.

Officer Beddingfield also testified to statements made by Carol Foley, Brazle's common-law wife, regarding Brazle's account of the incident. Beddingfield stated: "according to Mrs. Foley, Mr. Brazle had stated to her that he had driven his truck up to Chateau Forest Apartments, which is directly across the street from the J. Loan Company in Riverdale, Georgia, and that he had parked his truck there, and then as he left — hopefully, I can say this — as he left, he saw someone laying on the ground with someone standing over him." Given Brazle's differing accounts of the incident, there was more evidence upon which to convict Brazle than his mere presence across the street from the robbery, and conviction was authorized.

In addition to Brazle's differing statements, the following evidence supported conviction. The evidence was that the chiropractor's office, in front of which Foley fell when he was shot, was adjacent to the Chateau Forest Apartments. There was evidence that those properties were separated by a fence, which had several holes in it which would allow a person to pass through. Further, a Chateau Forest Apartment resident testified that at about 1:30 p.m. on January 10, she heard someone in the hallway outside of her apartment. She opened her door and saw a tray of rings which had been left on the stairwell. This witness stated that she then looked out of her apartment window and saw a man deposit an open duffel bag containing guns into the dumpster. She recalled that the man then ran to the back of the apartments. In a statement Foley gave to the police, he said that before being shot he was headed to a foyer in Chateau Forest Apartments. From this evidence, a jury could reasonably infer that Foley and Walker planned to meet Brazle at the parking lot, but that the plan went awry when Watson shot Foley. That Brazle *backed* into the parking space — from where he had a good view of J. Loan Company — to work on his brakes and that he left the scene by a different route, which was a less convenient route to his destination,

also support this construction.

There was other evidence that Brazle's actions did not support his theory. For example, if he was on his way to the attorney's office for the check, he had chosen a roundabout way to get there. Further, Brazle did not take the truck for an estimate on the brake repair for over three months after this incident despite his receipt that day of a $3,100 workers' compensation check. The fact that when Brazle left the parking lot after hearing gunshots he passed both the fallen man, who was his common-law wife's son, and the police station, also shed doubt on his theory.

Moreover, Brazle's defense — that he left the apartment parking lot and went to pick up his settlement check — was not inconsistent with his participation in the crime. There is no dispute that he left the lot after he heard gunshots; evidence that Brazle picked up his settlement check on January 10 does not alter this.

A rational trier of fact could find from the evidence adduced at trial proof of Brazle's guilt as a party to the crime of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also OCGA §§ 16-8-41 (a); 16-2-20. Accordingly, the trial court properly denied Brazle's motion for directed verdict.

I am authorized to state that Chief Judge Beasley, Judge Johnson and Judge Ruffin join in this dissent.

DECIDED NOVEMBER 12, 1996.

*Steven L. Harris*, for appellant.
*Robert E. Keller, District Attorney, Marion T. Woodward, Assistant District Attorney*, for appellee.