## A09A1453. WOOD v. THE STATE.
### (686 SE2d 319)

ADAMS, Judge.

After a jury convicted Christopher Jimmy Wood on one count of burglary, he filed a motion for new trial. Wood appeals following the denial of that motion asserting as his sole ground that the evidence was insufficient to support the verdict. We affirm.

In considering Wood's appeal, we must construe the evidence in a light most favorable to the verdict and "[Wood] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005). In evaluating whether the evidence was sufficient to support Wood's conviction, this Court does not weigh the evidence or determine witness credibility, but only determines whether a rational trier of fact could have found him guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence at trial showed that Glen Walraven owned property in Paulding County, on which sat various buildings, including a house, a garage, and a barn. Walraven used the property for his commercial fire alarm business. He maintained his office in

the house and stored equipment and wire on the property. During a four-week period in or around May 2006, the property experienced several break-ins, during which a number of items, primarily copper wire, were stolen. As a result, Walraven installed a security surveillance camera system, which recorded events on a three-day loop and had to be manually re-set to begin recording again. He also checked the property frequently. In late May 2006, Walraven went out of town for a four-day weekend. Before he left, he checked the buildings on the property to ensure that everything was in order.

On May 28, his cousin, Ronald Rakestraw, who lives across the street from Walraven's property, heard a vehicle on the road and saw a little white car slow, turn into the driveway, and accelerate "real fast." Rakestraw was aware of the break-ins on the property and decided to investigate. Because Rakestraw did not see Walraven's truck or the white car parked at the house, he decided to drive his utility vehicle down the driveway to investigate. At first Rakestraw could not find the car, but as he was turning around to leave, he noticed that the car had been parked beside the garage, behind the bushes, "where nobody ever parks."

Rakestraw then saw two men walking behind the garage, and he stepped out of his vehicle to ask if he could help them. They turned and started back toward the white car and said that they were looking for "Jason." Rakestraw suggested, and they agreed, that "the right thing to do" would have been to park in the yard and knock on the door if they were looking for someone. He told the men that the best thing for them to do would be to leave. Rakestraw then noticed that one of the men had a small roll of wire in his hand. He described it as "maybe six to eight feet of 12/2 wire, like you use for house wiring[,] that had been rolled up and mashed flat and twisted around." Rakestraw asked if the wire belonged to the man, who conceded that it did not, but said that he found it behind the barn. At Rakestraw's suggestion that he leave the wire, the man dropped it and both men got into the car and left. Rakestraw followed and wrote down the car's license number.

Police determined that the tag number Rakestraw obtained was from a car registered to Wood, and Rakestraw later identified Wood from a photographic lineup as the driver of the white car he had seen. Wood told police that Shannon Hanson[1] was the man with him in the car that day. Walraven testified, however, that he did not know either Wood or Hanson and that he never gave them permission to enter his property.

After Walraven returned from his trip and learned of

---

[1] Hanson pled guilty to one count of burglary in connection with this incident.

Rakestraw's encounter with the two men, he checked his property again. Although the house's basement door had been locked with a hasp and padlock when he left town, he discovered the door open and the hasp pried from the doorframe. Rakestraw showed Walraven the wire that the men had dropped. Walraven recognized it as electrical wire that he left in the basement after he installed a new electrical subpanel there. He explained that this wire was different from the wire he used in his security business, which was generally bare copper, smaller-gauge wire used for grounding. When Walraven checked the basement, he discovered that the electrical wire he had left there was gone.

Walraven also reviewed the tapes from his security cameras, which he had set a day or two before leaving on his trip and which had stopped recording before Rakestraw's encounter with Wood on the property. Walraven testified that the camera did not record anyone attempting to break into the house or the basement during the three days before the tape stopped recording. Walraven also stated that he had no more break-ins in the intervening two years between the incident involving Wood and the trial.

Wood contends that this evidence was insufficient to support his burglary conviction because the State failed to prove that there was an entry into any building or structure. He further argues that proof of mere presence at a place where an offense has been committed is insufficient to support a burglary conviction.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters the dwelling house of another." (Footnote omitted.) *Norful v. State*, 296 Ga. App. 387, 388 (674 SE2d 633) (2009). Wood is correct that "mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime," but "criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." (Citation, punctuation and footnote omitted.) *In the Interest of J. S.*, 296 Ga. App. 144, 148 (2) (a) (673 SE2d 645) (2009). "Moreover, evidence of recent, unexplained possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the burglary. [Cit.]" (Punctuation omitted.) *High v. State*, 282 Ga. 244 (1) (647 SE2d 270) (2007). "Whether or not a defendant's explanation of his possession of the stolen property was satisfactory or reasonable is a question for the jury. [Cit.]" (Punctuation omitted.) *Williams v. State*, 205 Ga. App. 397 (1) (422 SE2d 438) (1992).

Here the evidence showed Walraven left town with his property intact, but returned to find his basement door pried open. On the day before Walraven returned, Wood and Hanson were seen driving onto the property, where they hid their car from view. Rakestraw discov-

ered Wood and Hanson walking together behind the garage on the property, and the jury could have found that the explanation Wood and Hanson offered for their presence when confronted was not reasonable. Hanson had wire in his hand that Walraven later identified as wire he kept in the basement of his home. Although Hanson explained that he found the wire behind the barn, the jury was not required to accept this explanation. And while Wood was not seen with any stolen property, the jury could have found from his conduct that he was acting in concert with Hanson. For these reasons, we find the evidence sufficient to sustain his burglary conviction. See *Norful*, 296 Ga. App. at 388-389 (burglary conviction where no direct evidence defendant took property); *Griffith v. State*, 286 Ga. App. 859, 861 (1) (650 SE2d 413) (2007) (intent element of burglary); *Head v. State*, 261 Ga. App. 185, 187 (1) (582 SE2d 164) (2003) (burglary conviction upheld where defendant sat in car during burglary, then drove car away). See also *Kidd v. State*, 241 Ga. App. 446, 447 (1) (526 SE2d 916) (1999); *Childs v. State*, 176 Ga. App. 549, 552 (1) (336 SE2d 309) (1985).

It is true that the evidence of Wood's guilt is circumstantial, and "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." (Punctuation and footnote omitted.) *Gresham v. State*, 298 Ga. App. 136, 139 (1) (679 SE2d 344) (2009). Nevertheless, "[t]he state is not required to remove every possibility of innocence of the crime charged, and it is not required to disprove bare possibilities that the crime could have been committed by someone else." (Footnote omitted.) *Norful*, 296 Ga. App. at 388. "[Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence." (Punctuation and footnote omitted.) *Gresham*, 298 Ga. App. at 139 (1). "[W]here the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law." (Punctuation and footnote omitted.) Id. Here the evidence was sufficient to authorize the jury to find Wood guilty of burglary beyond a reasonable doubt.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED OCTOBER 30, 2009.

*Brandon A. Bullard*, for appellant.
*Fred A. Lane, Jr., District Attorney, Paul E. Hemmann, Assistant*

*District Attorney*, for appellee.